IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

THE O.N. EQUITY SALES COMPANY,

                         Plaintiff,                                CV-10-1426-ST

         v.                                        FINDINGS AND
                                                       RECOMMENDATION

ESTATE OF MARY T. GATTUCCIO PENCE,

                          Defendant.

STEWART, Magistrate Judge:

**<u>INTRODUCTION</u>**

On November 19, 2010, plaintiff, The O.N. Equity Sales Company ("ONESCO"), filed

this suit seeking declaratory judgment under 28 USC §§ 2201-02 against defendant, the Estate of

Mary T. Gattuccio Pence ("Estate"). This case arises from the alleged losses suffered by Mary T.

Gattuccio Pence ("Pence") due to theft and fraud committed by Colleen Averill ("Averill"), a

broker-dealer registered with the Financial Industry Regulatory Authority ("FINRA") who was

affiliated with ONESCO.  In this suit, ONESCO seeks a declaration that it has no liability to the Estate for any alleged actions by Averill and that Averill was not acting as its agent and/or within the scope of her agency.

This court has diversity jurisdiction under 28 USC § 1332(a).  ONESCO is an Ohio corporation and the Estate is currently pending in Oregon.   The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

.        On November 23, 2010, shortly after this action commenced, the Estate filed suit in the Circuit Court of the State of Oregon for the County of Multnomah, Case No. 1011-16582, alleging various claims under Oregon law against ONESCO, as well as against Averill and New York Life Insurance Company ("NY Life").

Based on this court's inherent discretionary powers under FRCP 1 and 28 USC § 2201(a), the Estate has filed a Motion to Dismiss this declaratory judgment action (docket # 7) because it seeks to deprive the Estate of its choice of forum in state court.  For the reasons set forth below, that motion should be granted.

## FACTUAL BACKGROUND

### I.  State Court Complaint Allegations

The Complaint filed by the Estate in state court alleges the following facts:

Pence was born on May 4, 1914.  In the late 1990's, her longtime friend, Irene Orselli, introduced her to Averill.  At all material times, Averill was a certified financial planner and registered representative of ONESCO, a registered representative and/or agent of NY Life, and engaged in business in that capacity in Portland, Oregon.

Pence opened and maintained multiple accounts through and with Averill between 1998 and 2009.  Among others, Pence purchased an annuity through NY Life in 1998 for $31,250.00 and another in 2001 for $35,000.00.  Over time and upon Averill's advice, Pence moved the bulk of her investments to ONESCO and NY Life.  As Pence's financial advisor, and based in part on her status (perceived and actual) with NY Life and ONESCO, Averill built a relationship of trust with Pence.

Pence moved into an assisted living facility in 2005.  Shortly thereafter, upon Averill's advice and with her assistance, Pence sold the home she built with her first husband for $452,472.25, after fees and commissions.  Pence invested these sales proceeds with Averill, who used some of the funds to open several investment accounts with NY Life.

In February of 2006, Averill – without Pence's knowledge or consent – added Pence as a joint owner on Averill's checking account at OnPoint Community Credit Union ("OnPoint").  To accomplish this, Averill filled out Pence's portion of the account application and forged Pence's signature.  Averill then began repeatedly telephoning NY Life and ONESCO to request dispersals from Pence's investment and annuity accounts.  NY Life and ONESCO dispersed the money from Pence's accounts pursuant to Averill's instructions and sent some of the checks directly to Averill, who then deposited them into the OnPoint account.  If and when NY Life and ONESCO sent the checks directly to Pence, they did so by overnight delivery to the front desk of the residential care facility at which Pence resided, without requiring a signature or providing other safeguards against theft, again upon Averill's instruction.  Averill took and deposited these checks into the OnPoint account.  In total, over a three year period from 2006 to 2009, NY Life

sent, and Averill deposited into her own account, checks totaling at least $398,351.55 out of

Pence's investment and annuity accounts.

Over this same three year period and in reliance on Averill's advice, Pence gave Averill

several checks worth a total of more than $165,500.00 with instructions to purchase certificates

of deposit. Instead, Averill deposited the checks into the OnPoint account for her own use and

benefit. As a result of Averill's raiding of Pence's various accounts, Pence was left nearly

destitute.

On or about October 26, 2009, Averill was arrested and charged with 90 counts of

aggravated theft (including theft by deception), criminal mistreatment, and forgery, all related to

or arising out of her fraudulent taking of funds held in Pence's accounts with NY Life,

ONESCO, and others. On or about February 23, 2010, Averill pleaded no contest to, and was

subsequently convicted of, 16 charges, consisting of seven counts of aggravated theft in the first

degree (including theft by deception), seven counts of criminal mistreatment of an elderly person

in the first degree, and two counts of forgery in the first degree. Averill was sentenced to three

years in prison and is currently an inmate at the Coffee Creek Correctional Facility in

Wilsonville, Oregon.

As a result of Averill's misconduct, the state court case filed by the Estate alleges claims

against Averill,[1] ONESCO, and NY Life for elder abuse under ORS 124.100, common law fraud,

conversion, and securities fraud under ORS 59.115 and .135, and claims against ONESCO and

NY Life for vicarious liability and negligence.

---

[1]  Although conceding that Averill may be judgment-proof, the Estate has named her as a defendant primarily to avoid the
"empty chair defense" by the other defendants.

## II.  Contacts Between Pence and ONESCO

On December 15, 2009, Pence's attorney, Mr. Andrew T. Reilly, sent the first of three

letters related to this matter to ONESCO.  Reilly Decl., ¶ 2, Ex 1.  This first letter advised

ONESCO that Pence was represented by counsel and explained the nature of Pence's grievance

with ONESCO.  *Id.*  This letter also made clear that Pence was looking to ONESCO as a

potentially liable party based on its relationship with Averill.  *Id.*

In a reply dated January 6, 2010, Mr. William Price, Vice President and Assistant General

Counsel for ONESCO, indicated that he had received the December 15, 2009 letter and that

while ONESCO generally disagreed with its statements, he would serve as the contact person for

any future communications related to the matter.  *Id*, ¶ 3, Ex. 2.

On May 28, 2010, Mr. Reilly mailed a second letter to ONESCO.  *Id*, ¶ 4, Ex. 3.  This

second letter made a "bottom-line settlement demand" for reimbursement of Pence's losses and

advised that Pence had "authorized us to initiate suit" if payment of this amount "or other

suitable alternative arrangements are not made" by June 11, 2010.  *Id.*

In response, Mr. Price sent a letter dated June 10, 2010, in which he generally denied

liability for Pence's loss and specifically claimed that ONESCO was relieved of liability because

Averill was acting as an independent contractor.  *Id,* ¶ 5, Ex. 4.  Before evaluating and

responding to any demand being made by Pence, he asked for additional information regarding

the alleged funds stolen by Averill, the source of those funds, and the time period involved.  *Id.*

Two months later on August 13, 2010, Mr. Reilly sent an email to Mr. Price stating that

having just learned that Pence was in the hospital and may not live through the weekend, he

intended to seek a perpetuation deposition of Pence "on an expedited basis as soon as possible."

Price Decl., Ex. 4.  The subject line of this email included a case caption of Pence against Averill and ONESCO, "Multnomah County Circuit Court Case No. TBD."  *Id*.  Mr. Price immediately objected to this notice as untimely and improper.  *Id*, Ex. 4 & 5.

Pence died on August 16, 2010, at the age of 96.  Her youngest child, Michael Gattuccio ("Gattuccio"), was appointed Personal Representative of the Estate on September 13, 2010, and Letters Testamentary issued on September 16, 2010.  *Id*, ¶ 8 & 9, Exs. 7 & 8.  Shortly thereafter, on October 12, 2010, Gattuccio, as Personal Representative, formally retained Mr. Reilly to pursue what had become the Estate's claims against, among others, ONESCO.  *Id*, ¶ 1.

On November 9, 2010, Mr. Reilly, representing the Estate, sent a third and final letter to ONESCO demanding settlement, enclosing a CD with a copy of the police investigative and criminal files, and advising that the Estate intended to file suit on November 23, 2010, absent a satisfactory resolution of the Estate's claims.  *Id*, ¶ 6, Ex. 5.  Included with that letter was a copy of the Estate's draft Complaint against ONESCO, NY Life, and Averill to be filed in state court.  *Id.*  As a result, ONESCO knew that because Averill – an Oregon resident – was included as a defendant, the suit would not be removable to federal court.

Without replying to this last letter, ONESCO filed this suit for declaratory judgment on November 19, 2010, less than two judicial days prior to the date upon which ONESCO knew the Estate planned on filing a non-removable state court action. *Id*, ¶ 7.  On November 23, 2010, after ONESCO failed to respond to the settlement demand, the Estate followed through with its stated intent and filed suit in state court against ONESCO, NY Life, and Averill.  *Id*.

///

///

6 - FINDINGS AND RECOMMENDATION

## STANDARDS

The Declaratory Judgment Act authorizes district courts to declare the rights and other legal relations of cases "of actual controversy within [their] jurisdiction" and grants this court discretion to entertain a suit for declaratory relief:

> In a case of actual controversy within its jurisdiction, [exceptions omitted] . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 USC § 2201(a).

The authority granted under this section is clearly permissive, not mandatory. *Government Emps. Ins. Co. v. Dizol*, 133 F3d 1220, 1223 (9th Cir 1998). However, the district court must determine on the record whether it should exercise its discretion, guided by the factors identified in *Brillhart v. Excess Ins. Co. of Am.*, 316 US 491 (1942) and its progeny. *Dizol*, 133 F3d at 1223-25. The factors identified in *Brillhart* include: "(1) whether a refusal to entertain the request for declaratory relief avoids needless decisions of state law by the federal court; (2) whether the action is a means of forum shopping; and (3) whether dismissal of the claim for declaratory relief would avoid duplicative litigation." *Smith v. Lenches*, 263 F3d 972, 977 (9th Cir 2001) (citation omitted). Those factors are not exhaustive. *Dizol*, 133 F3d at 1225 n5.

## FINDINGS

### I.  Needless Determination of State Law Issues

The first *Brillhart* factor directs a court to consider whether a refusal to entertain the request for declaratory relief avoids needless determinations of state law issues. In this case, the

only issues involved are state law issues concerning the agency relationship, if any, between

Averill and ONESCO.

When the sole basis of federal jurisdiction is diversity of citizenship, "the federal interest

is at its nadir [and] the *Brillhart* policy of avoiding unnecessary declarations of state law is

especially strong." *Continental Cas. Co. v. Robsac Indus.*, 947 F2d 1367, 1371 (9th Cir 1991)

("*Robsac*"), *overruled on other grounds by Dizol*, 133 F3d at 1227. Because the sole basis of

jurisdiction in this case is diversity of citizenship, the first *Brillhart* factor weighs against

retaining jurisdiction.

## II.  Forum Shopping

With respect to the second *Brillhart* factor, the Ninth Circuit has noted that "federal

courts should generally decline to entertain reactive declaratory actions." *Dizol*, 133 F3d at 1225.

The Ninth Circuit employs a broad concept of "reactive" litigation which does not require a

pending state court proceeding:

> A declaratory judgment action by an insurance company against its
> insured during the pendency of a non-removable state court action
> presenting the same issues of state law is an archetype of what we
> have termed "reactive" litigation. . . . [However] [r]eactive
> litigation can occur in response to a claim an insurance carrier
> believes to be not subject to coverage even though the claimant has
> not yet filed his state court action: the insurer may anticipate that
> its insured intends to file a non-removable state court action, and
> rush to file a federal action before the insured does so. If, as [the
> insurer] contends, it intended to file suit in federal court before [the
> insured] filed its state court action, the reason [the insurer] formed
> that intention was that [the insurer] was aware of [the insured's]
> claim and hoped to preempt any state court proceeding. Whether
> the federal declaratory judgment action regarding insurance
> coverage is filed first or second, it is reactive, and permitting it to
> go forward when there is a pending state court case presenting the

8 - FINDINGS AND RECOMMENDATION

> identical issue would encourage forum shopping in violation of the
> second *Brillhart* principle.

*Robsac*, 947 F2d at 1372-73, *overruled on other grounds by Dizol*, 133 F3d at 1227.

Following a suggestion by the Supreme Court in *Wilton v. Seven Falls Co.*, 515 US 277,

279-80 (1995), "that the order of filing is legally insignificant when it ruled in favor of a state

action filed several weeks after a federal action," the Ninth Circuit concluded that "the fact that

[the insurer] won the race to the courthouse by several days does not place it in a preferred

position." *Huth v. Hartford Ins. Co. of the Midwest*, 298 F3d 800, 804 (9th Cir 2002), *cert

denied*, 537 US 1233 (2003).

ONESCO contends that it did not race to the courthouse, but filed this suit only after

deciding that "enough was enough" and that it was time, after several unfulfilled threats of

litigation over nearly a year by Pence's attorney, to finally seek a resolution of its alleged

liability.  However, the facts do not support this version of the events leading up to the filing of

this suit.  Of the three communications from Pence's attorney to ONESCO, only the last one

dated November 9, 2010, expressly stated an intent to file suit by a date certain.  The prior letters

simply notified ONESCO of Pence's potential claims and legal representation and sought to

settle the matter short of litigation.  Although the second letter advised that Pence had authorized

the filing of a lawsuit if payment was not received by June 11, 2010, it did not specifically warn

that suit would be filed by that date.  In fact, ONESCO did not seem to view it as a concrete

threat of litigation since it responded by requesting more information.  Furthermore, any delay by

the Estate in filing suit against ONESCO was fully justified by circumstances beyond its control

and unavoidable, first by the criminal prosecution and eventual conviction and sentencing of

Averill, and second by the subsequent death of Pence which necessitated the appointment of a personal representative.

If ONESCO truly felt "enough was enough," it could simply have waited two more judicial days to defend against the state court action which the Estate filed on the precise date it gave ONESCO. There simply is no avoiding the fact that ONESCO filed this case without warning on the heels of the Estate's notice of its intent to file a state court case joining Averill which would not be removable to federal court. When faced with the Estate's threat of litigation and choice of a state court forum, ONESCO chose to file this action for declaratory relief in this court.

Whether ONESCO felt it needed a resolution of the dispute is not the issue. Instead, the issue is whether allowing its claim for declaratory relief to proceed in this court would encourage forum shopping. This court concludes that it would have exactly that effect.

### III.  Avoiding Duplicative Litigation

The third *Brillhart* factor asks whether dismissal of the declaratory action would avoid duplicative litigation. There can be no doubt that the presently pending cases are duplicative as to the one issue concerning ONESCO's liability for Averill's conduct as its agent. But this case will not resolve of all the issues. Even if this case proceeds, nearly all of the same facts will have to be found and issues litigated in the state court case against NY Life and Averill which will proceed regardless of the outcome here. In fact, the Estate has alleged other bases for liability against ONESCO in the state court that are not dependent on Averill's agency relationship, but instead arise from her undisputed status as a registered representative, such as control person liability under Oregon's securities law.

10 - FINDINGS AND RECOMMENDATION

Although the Estate's filing of the state court action followed ONESCO's filing of this case, the Estate still fired the first volley when it sent its November 9, 2010 demand letter to ONESCO. Although premised on a claim for declaratory relief, this action substantively duplicates the Estate's action, and not the other way around.

## IV. <u>Other Pertinent Factors</u>

In *Dizol*, the court identified a non-exhaustive list of other factors that may be considered in deciding whether to exercise jurisdiction, including: (1) whether the declaratory judgment action will settle all aspects of the controversy; (2) whether the declaratory judgment action will serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a *res judicata* advantage; (4) whether the declaratory judgment action will result in entanglement between the federal and state court systems; (5) the convenience of the parties; and (6) the availability and convenience of other remedies. *Dizol*, 133 F3d at 1225 n5, citing *Am. States Ins. Co. v. Kearns*, 15 F3d 142, 145 (9th Cir 1994).

As already noted, this declaratory judgment action may serve a useful purpose by resolving some aspects of the controversy between the Estate and ONESCO, but will not resolve all issues between them or any of the other claims by the Estate arising from Averill's conduct. This court perceives no difference in the relative convenience to the parties or any identified danger of entanglement between the federal and state court systems. Suffice it to say that this case fits the bill of a classic "reactive declaratory action" that "federal courts should generally decline to entertain." *Id* at 1225. This court is not persuaded that any factor identified by ONESCO counsels against declining to exercise jurisdiction. All parties are before a competent

state court which clearly has jurisdiction over the controversy and is able to resolve all the pertinent issues.

## RECOMMENDATION

For the reasons stated above, the Estate's Motion to Dismiss (docket #7) should be GRANTED and this action should be dismissed.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge.  Objections, if any, are due February 22, 2011.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

DATED this 4th day of February, 2011.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

12 - FINDINGS AND RECOMMENDATION